## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KENITHIA ALSTON, individually and as Special
Administrator to the Estate of Marqueese Alston,

      *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, *et al.*,

      *Defendants*.

1:20-cv-1515 (KBJ)

## DEFENDANTS CALEB DERMERITT AND RONALD KOCH'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Caleb Demeritt and Ronald Koch move the Court under Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint because Plaintiff Kenithia Alston, individually and as Special Administrator to the Estate of Marqueese Alston, has failed to state any claim for which relief can be granted against these Defendants. These Defendants are entitled to qualified immunity and a privilege for the June 12, 2018 shooting. And Alston has failed to show she is entitled to relief in her individual capacity.

Detailed grounds for this motion are set forth in the attached memorandum of points and authorities. A proposed order is also attached.

Date: November 4, 2020

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

/s/  *Kerslyn D. Featherstone*
KERSLYN D. FEATHERTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
MICHELLE HERSH
D.C. Bar No. 980097
MATTHEW TROUT
D.C. Bar No. 1030119
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 724-6600 (direct)
(202) 727-6295 (main)
(202) 741-8924 (fax)
kerslyn.featherstone@dc.gov

*Counsel for Defendants Demeritt and Koch*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KENITHIA ALSTON, individually and as Special Administrator to the Estate of Marqueese Alston, | |
| *Plaintiff*, | |
| v. | 1:20-cv-1515 (KBJ) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CALEB DEMERITT AND RONALD KOCH'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Caleb Demeritt (Officer Demeritt) and Ronald Koch[1] (Officer Koch) submit this memorandum of points and authorities in support of their motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

This action filed by Plaintiff Kenithia Alston against these Defendants for the June 12, 2018 shooting involving Marqueese Alston raises no valid claims for which relief can be granted against them under any theory of liability. As shown below, these Defendants are entitled to qualified immunity and a privilege for the June 12, 2018 shooting. Because Officers Demeritt and Koch's actions were objectively reasonable, Alston's claims against them fail as a matter of law. And Alston has no valid claim in her individual capacity against these Defendants. Thus, the Court should grant this motion and dismiss the Amended Complaint against these Defendants with prejudice.

---

[1]      These Defendants are either identified as Officers Demeritt and Koch or X and Y throughout this filing.

## FACTS

This case stems from the June 12, 2018 shooting of M. Alston by Officers X and Y (Officers Demeritt and Koch).  Am. Compl. ¶ 11.  Alston alleges that, on that date, M. Alston was speaking with individuals in the 3700 block of First Street, SE when officers from two different vehicles jumped out of their vehicles, approached M. Alston, did not identify themselves, failed to give any directives and, without warning, chased M. Alston.  *Id.* ¶¶ 12, 15.  According to Alston, M. Alston "suffered extreme emotional distress when he was pursued by Officers X and Y without apparent cause or provocation."  *Id.* at ¶ 73.  Alston alleges "Officers X and Y saw Mr. Alston in an alley with a group of young men on suspicion that the men carried illegal firearms."  *Id.* ¶ 13.  And "at least one of the officers was scrolling through his phone on Instagram, they … [saw] the outline of a gun and the trigger through Mr. Alston's pants."  *Id.* Alston also alleges that M. Alston ran, he then "started to stop and turned to face [the officers]…then turned forwards… [and] Officers X and Y shot him between twelve and eighteen times, including after he had already fallen to the ground."  *Id.* ¶ 16.  Alston alleges that X and Y "wrongfully killed" M. Alston, and Z and A, through their supervision, failed to prevent the "unlawful killing."  *Id.* ¶ 91.

Alston acknowledges that "Officers X and Y wore Axon body-worn cameras [BWC] that captured their foot-chase and shooting of Mr. Alston."  *Id.* ¶ 37.  Alston reviewed the footage that she alleges showed "M. Alston turning to face the officers while holding a small object; the sound of gunfire; and then Mr. Alston's body lying on the ground."  *Id.* ¶¶ 40, 42.  Alston states that "the BWC footage indicates that Officers X and Y were executing a jump-out when they approached Mr. Alston."  *Id.* ¶ 65.

Alston alleges that, in her individual capacity, she has experienced pain and grief in her public and private life because:

> "MPD [ ] killed her son and the subsequent and ongoing treatment she received; from not being told of his death until the next day; from being denied access to the BWC footage of her son's encounter with Officers X and Y, from twice being shown only unclear and manipulated segments of the footage; from being given little warning as to when MPD's presentation of events would be released to the public, not being asked if it could be released to the public; nor being sked if it could be released to the public; from having her son's name and character misrepresented by the MPD to the public; from reliving her son's death through her ireless advocacy to view and secure public release of the BWC footage; and from never having learned why the officers targeted, pursued, and killed her son."

*Id.* ¶ 76.  Based on the allegations in the Amended Complaint, Kenithia Alston, individually as mother of Marqueese Alston, and as Special Administrator to the Estate of Marqueese Alston, sued Officers Demeritt and Koch under:  Count I: Wrongful Death and Count II: Survivorship—Fourth Amendment Unreasonable Seizure/False Arrest/Lack of Probable Cause (Against Officers); Count III: Wrongful Death and Count IV: Survivorship—Fourth Amendment Unreasonable Seizure by Excessive Use of Force (Against Officers); Count V: Wrongful Death and Count VI: Survivorship—Fifth and Fourteenth Amendments Violation of Procedural and Substantive Due Process Rights (Against Officers);  Count IX: Wrongful Death and Count X: Survivorship—Fourteenth Amendment Violation of Due Process Rights in Access to the Courts (Against Defendant Officers and D.C.); Count XI: Wrongful Death—Battery; Count XII: Survivorship—Battery; Count XIII: Wrongful Death—Assault; Count XIV: Survivorship—Assault (Against Defendant Officers and D.C.); Count XV: Survivorship Common Law Intentional Infliction of Emotional Distress Mr. Alston (Against Defendant Officers and D.C.); XVI: Wrongful Death—Common Law Intentional Infliction of Emotional Distress Plaintiff Kenithia Alston (Against Defendant Officers and D.C.); Count XVII:

Survivorship—Common, Law Negligent Infliction of Emotional Distress Mr. Alston (Against Defendant Officers and D.C.), Count XIX: Wrongful Death and Count XX: Survivorship—Common Law Negligence in Supervising and Retaining Officers X and Y (Against Defendant Officers and D.C.); Count XXI: Wrongful Death and Count XII: Survivorship—Common Law Negligence in Training Officers X and Y (Against Defendant Officers and D.C.); Count XXIII: Wrongful Death and Count XXIV: Survivorship—Common Law Negligence Leading to the Death of Mr. Alston (Against Officers).  Officers Demeritt and Koch now move to dismiss all claims raised against them in the Amended Complaint.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The Supreme Court has set forth a "two-pronged approach" that a trial court should use when ruling on a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009).

## ARGUMENT

I. **Alston's Claims Under the Fourth Amendment for Unreasonable Seizure, Excessive Force, and Lack of Cause (Counts I and II), Unreasonable Seizure by Excessive Force (Counts III and IV), and Common Law Claims for Assault and Battery (Counts XI, XII, XIII and XIV) Fail As a Matter of Law.**

### A.   **Alston's Lack of Cause Claims Fail.**

Alston's "lack of cause" claims under Counts I and II are not actionable because "lack of cause" is not a viable cause of action.  Rather, "lack of cause" or "lack of probable cause" is an element which supports or negates causes of actions such as search, seizure, and excessive force claims under the Fourth Amendment.  Thus, proof of "lack of cause" does not prove a claim. *See, e.g., Beier v. Lewiston,* 354 F.3d 1058, 1064 (9th Cir. 2004) ("Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa").  *See also Tennessee v. Garner*, 471 U.S. 1, 3 (1985) (If deadly force is used the officer must have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury.")  For these reasons, Alston's "lack of cause" claims should be dismissed.

### B.   **Officers Demeritt and Koch Are Entitled to Qualified Immunity and a Privilege For Their Actions on June 12, 2018.**

Alston seeks to hold Officers X and Y (Officers Demeritt and Koch) liable for unlawful seizure and excessive force under the Fourth Amendment, and for assault and battery at common law, because they shot M. Alston on June 12, 2018.  *See* Am. Compl. ¶¶ 94-106.  *First,* as explained in *United States v Mendenhall,* 446 US 544, 558-59 (1980), "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Second,* under federal law, there is no specific definition for excessive force.  Rather, excessive

force turns on what a reasonable police officer in the same or similar set of circumstances would believe exceeds the force used.  That said, Officers Demeritt and Koch are entitled to qualified immunity and a common law privilege for the seizure and shooting death of M. Alston because at the time of the shooting, they reasonably believed M. Alston threatened them, other MPD officers and citizens in the area.  The doctrine of qualified immunity shields an officer from liability for alleged false arrests and excessive force claims under the Fourth Amendment insofar as the officer's conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.  *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and … is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  Courts have "repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam).

Qualified immunity balances two important interests—the need to shield the police from harassment, distraction, and liability when they perform their duties reasonably, and the need to hold them accountable when they irresponsibly exercise their powers.  *Id*.  As explained in *Anderson v. Creighton*, 483 U.S. 635 (1987):

> Permitting damage suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.  Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

The Supreme Court has explained that, in deciding whether an officer is entitled to qualified immunity, the trial court must determine (1) whether a plaintiff has proved facts that show

deprivation of a constitutional right and (2) whether the constitutional right at issue was clearly established at the time of the officer's alleged conduct. *Pearson*, 555 U.S. at 231-32. The trial court may decide which question to analyze first in light of the particular circumstances of the case. *Id*. at 235-36. Where a plaintiff alleges excessive force, a court's qualified immunity analysis turns on the "objective legal reasonableness of the officer's conduct," and the court analyzes the officer's actions employing the same "objective reasonableness" criteria adopted in *Graham v. Conner*, 490 U.S. 386, 396 (1989). *See also Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011). For alleged wrongful seizure claims, the court must use the same objective reasonableness criteria to analyze the officer's conduct. *See Sanford Unified School District #1 v. Redding,* 129 S.Ct. 2633 (2009) (When a plaintiff claims that his right to be safe from an unreasonable is violated, an officer may still be entitled to qualified immunity if "clearly established law does not show that the [seizure] violated the Fourth Amendment."

   Qualified immunity also operates to protect an officer from the sometimes "hazy border between excessive and acceptable force . . . and to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. *Id*. If the officer's mistake as to what the law requires is reasonable, however, the officer is still entitled to qualified immunity. *Id*.; (if an officer reasonably but mistakenly concludes that a suspect posed a threat of harm, "that a suspect was likely to fight back, for instance," the officer would be justified in using more [force] than in fact was needed). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202; *see also*

*Johnson v. District of Columbia*, 381 U.S. App. D.C. 351, 528 F.3d 969, 976 (D.C. Cir. 2008) (noting that although reasonableness might be a factor in both steps, the second step focuses solely on whether it was reasonable for the government official to not know their conduct was unlawful).  To be sure, the process of determining qualified immunity is fact intensive and must consider the specific context of the case, such as status of the government official in question and the particular factual and legal claims against that official, and the contours of the right should be clear such that a reasonable official would know that what he is doing was violating that right.  *Saucier*, 534 U.S. at 201-02.

"An assault is an intentional act to do physical harm to the victim," while "[a] battery is an intentional act that causes a harmful or offensive bodily contact."  *Evans–Reid v. District of Columbia,* 930 A.2d 930, 937 (D.C. 2007).  The unreasonable use of force by a police officer may constitute an assault and battery under District of Columbia law.  *See Hundley v. District of Columbia,* 494 F.3d 1097, 1101 (C.A.D.C.2007).  "A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the [officer] reasonably believes to be necessary."  *Scales v. District of Columbia,* 973 A.2d 722, 730 (D.C. 2009).  *See also Gabrou v. May Dep't Stores Co.,* 462 A.2d 1102, 1105, n. 4 (D.C. 1983), *citing Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980).  Given that objective reasonableness is the standard by which this Court must use to decide whether these Defendants should be granted qualified immunity and a common law privilege, these Defendants analyze these defenses together.

The *Graham* Court decided that reasonableness is to be determined by the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  Indeed, "[a]n officer

is justified in using lethal force when [the officer] 'has probable cause to believe that the suspect

poses a threat of serious physical harm to the officer or others.'"  *See Goffin v. Ashcraft,* 957

F.3d 858 (2020), *citing Garner,* 471 U.S. at 11.  In *Goffin,* an officer tried to handcuff and arrest

the suspect (Goffin) for burglary, stealing handguns, bullets, and prescription pain medication.

Goffin escaped and ran towards a group of bystanders.  When Goffin raised his right shoulder,

the officer shot him believing he was reaching for a weapon in his pocket or waistband.  The trial

court's grant of qualified immunity to the officer was affirmed on appeal.  According to the

Court, by the time the officer confronted Goffin, "she objectively and reasonably" believed

Goffin was dangerous.  *Id.* at 862  Although Goffin was unarmed when the officer shot him, the

Court found that the facts known to the officer at the time of the shooting supported her objective

belief that Goffin was dangerous.  For example, the officer knew that Goffin had stolen several

guns, was drunk, had threatened someone else with the stolen gun, and a family member warned

her that Goffin wanted a fight.  The Court reasoned that "it [was] not clearly established that

after observing a pat down that removes nothing from a suspect who an officer reasonably

believed to be armed and dangerous, an officer cannot use lethal force against that suspect when

he flees and moves as though he is reaching for a weapon." *Id.* at 863.

Here, the parties agree that video footage captured the June 12, 2018 shooting.  *See* Am.

Compl. ¶¶ 37, 41 (Officers X and Y wore activated body worn cameras (BWCs) that captured

their encounter with and shooting of Mr. Alston.)  "[A]t some point during the chase Mr. Alston

reached towards his waistband and brandished a gun before Officers X and Y shot him." *Id.* ¶

27.  And Alston alleges the video footage shows "Mr. Alston turning to face the officers while

holding a small object, the sound of gunfire, and then Mr. Alston's body lying on the ground."

*Id.* ¶ 42.  *See also* Body-Worn Camera Footage, Ex. A; Body-Worn Camera Footage, Ex. B;

Slowed Body-Worn Camera Footage, Ex. C; Slowed Body-Worn Camera Footage, Ex. D.  The

video footage shows M. Alston turned towards Officers X and Y with a weapon in hand *before*

they shot him.  *See* Exs. A-D, attached to the District's Motion to Dismiss [18]  And the photo

below also shows M. Alston facing Officers Demeritt and Koch with a weapon *before* they shot

him.



Viewing all the allegations in the Amended Complaint, coupled with the video footage, and the

photo of M. Alston as observed by Officers Demeritt and Koch, no reasonable juror could find

that they did not reasonably believe that M. Alston threated their safety and the safety of others.

Because M. Alston's actions led to the shooting, the force used by Officers Demeritt and Koch

was not excessive.  Rather, they reasonably believed the force they used was necessary under the

circumstances.  *Scales*, 973 A.2d at 730.  That Alston chooses to believe that the video footage

was "manipulated" is insufficient to deny these Defendants qualified immunity and a privilege

for their conduct.  *See Scott v. Harris,* 550 U.S. 372, 374-79 (2007) (holding that unsubstantiated

allegations contradicted by video evidence did not raise a genuine factual dispute).

10

In *Scott*, a deputy sheriff caused a fleeing vehicle to crash.  The driver filed a § 1983 lawsuit against the deputy alleging that he used excessive force against him in violation of the Fourth Amendment.  The trial court denied the deputy's qualified immunity defense.  While the Eleventh Circuit affirmed the District Court's denial of qualified immunity because of claimed disputed facts, the Supreme Court ruled the deputy had a right to qualified immunity.  In reaching its decision, the Supreme Court ruled that in the usual case where the litigants' version of the facts differs substantially, summary judgment is inappropriate, because the trier of fact must make factual findings.  *Id*. at 378.  The Supreme Court found that the videotape that fully captured the events in question, contradicted the plaintiff's version of events.  *Id.* at 379.  The Supreme Court ruled that based on what was shown in the video, no reasonable juror could believe plaintiff's version of the facts and stated the appellate court "should have viewed the facts in the light depicted by the videotape" not in the light of the plaintiff's version of the facts. *Id*. at 380-81.

The reasonableness of an officer's conduct is judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.  *Id*.  Courts necessarily allow for the fact that the police are often forced to make split-second judgments about the amount of force warranted in circumstances that are tense, uncertain, and rapidly evolving.  *Id.* at 396-97; *accord Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011).  Given the information available to Officers Demeritt and Koch when they were face to face with M. Alton, no reasonable juror could find that the shooting was unjustified.  *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.")  Indeed, a police officer is justified in using reasonable force to repeal an actual assault or if he reasonably

believes he is in danger of bodily harm.  *See Evans–Reid,* 930 A.2d at 937.  Use of "deadly force" is lawful if the officer "actually and reasonably believes, at the time such force is used, that he or she (or a third person) is in imminent peril of death or serious bodily harm" *Id.*  Just as the officers in *Goffin* and *Evans-Reid* were granted qualified immunity because they believed the suspects threatened their safety, so too should this Court grant Officers Demeritt and Koch qualified immunity and a privilege because their belief that Alston, armed with a weapon, threatened their and others' safety was reasonably objective.  And it was not clearly established, before June 12, 2018, that shooting a suspect armed with a weapon pointed in the officer's direction was illegal.  *Id.*  On this record, dismissal is warranted on Counts I, II, III, IV, XI, XII, XIII, and XIV.

## II.     Alston's Fifth Amendment Procedural and Substantive Due Process Claims (Counts V and VI) Are Infirm.

### A.     Alston's Fifth Amendment Claims Under Counts V and VI Should Be Dismissed Because They Merge With Her Fourth Amendment Claims Under Counts I, II, III, and IV.

Alston seeks to proceed against Officers Demeritt and Koch under the Fifth and Fourteenth Amendments for M. Alston's shooting death.  *See* Am. Compl. ¶¶ 107-122.  It is well-settled law that the Fifth Amendment's guarantee of substantive due process "is intended to prevent government officials from abusing their power or employing it as an instrument of oppression."  *See County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998).  A plaintiff may make a substantive due process claim for misconduct so long as his claim is not "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment."  *Lewis*, 523 U.S. at 843.  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more

generalized notion of substantive due process must be the guide for analyzing these claims. *Id.* at 842.

Here, Alston's claim for relief under the Fifth Amendment arises from the same facts and circumstances that she characterizes as an unlawful seizure and excessive force under the Fourth Amendment by X and Y when they shot M. Alston. *See* Am. Comp. at ¶¶ 107-122. Search and seizure claims must be analyzed under the Fourth Amendment. Indeed, the Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, from unreasonable searches and seizures." *See* U.S. CONST. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (Fourth Amendment protects against unreasonable seizures and excessive force); *Tennessee v. Garner*, 471 U.S. 1 (1985) (§ 1983 claim for "seizure" of person by deadly force analyzed under a Fourth Amendment standard). Because Alston's claims must be analyzed under the Fourth Amendment and not the Fifth Amendment, dismissal of the Fifth Amendment claims is appropriate. *See Matthews v. District of Columbia*, 730 F.Supp.2d 33, 36 (D.D.C. 2010) (Fifth Amendment claim merges with Fourth Amendment claim).

In *Matthews*, the plaintiffs sued the District for constitutional violations under 42 U.S.C. § 1983 and the First, Fourth, and Fifth Amendments, alleging that MPD officers unlawfully strip searched them. *Id*. at 35–36. The District moved for dismissal. In ruling in the District's favor, the Court held that the plaintiffs failed to state a claim under the Fifth Amendment. *Id*. The Court reasoned that where the conduct at issue arises from the same conduct protected by the Fourth Amendment, i.e., facts and circumstances of the arrest or investigatory stop, then the proper analysis is under the Fourth Amendment and the two claims (Fourth and Fifth) merge. Just as the *Matthews* Court dismissed the plaintiffs' Fifth Amendment claim, so should this

Court dismiss Alston's Fifth Amendment claims as they must be analyzed under the Fourth

Amendment.  *See Lyles v. Micenko*, 468 F. Supp. 2d 68, 72-74 (D.D.C. 2006), *citing Albright v.*

*Oliver,* 510 U.S. 266, 273 (1994) (Court will not analyze plaintiffs' § 1983 under the Fifth

Amendment, as that claim is a general due process violation claim, and when "a particular

Amendment provides an explicit textual source of constitutional protection against a particular

sort of governmental behavior, that Amendment, not the more generalized notion of substantive

due process, must be the guide for analyzing these claims.")

**B.**     **Alston's Procedural and Substantive Due Process Claims (Counts V and VI) Fail.**

Even if Alston's Fourth and Fifth Amendment claims do not merge, dismissal of her Fifth

Amendment claim is still warranted.  Alston seeks to proceed against Officers Demeritt and

Koch for violating M. Alston's procedural and substantive due process rights.  *See* Am. Compl.

¶¶ 107-122.  However, in order to state a procedural due process claim under the Fifth

Amendment, a plaintiff must allege a deprivation of life, liberty, or property, without due process

of law.  *See* U.S. Const. amend. V.  The "fundamental requirement of due process is the

opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v.*

*Eldridge*, 424 U.S. 319, 333 (1976) (internal citation omitted).  As made clear by the *Mathews*

Court, due process is "flexible and calls for such procedural protections as the particular situation

demands."  *Id.*, 424 U.S. at 334.  And to prevail on a substantive due process claim, the plaintiff

must show conduct by the state actor that "shocks the conscience" or constitutes force that is

"brutal" and "offend[s] even hardened sensibilities."  *See Rivera v. Rhode Island*, 402 F.3d 27

(lst Cir. 2005).  *See also Hasenfus v. LaJeunesse*, 175 F.3d 68, 73 (1st Cir. 1999) (In a state

created danger case, state behavior must be "conscience-shocking or outrageous.").  In ruling on

substantive due process claims, the court may first address whether the state action is sufficiently

conscience shocking.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S.Ct.

1708, 140 L.Ed.2d 1043 (1998).  The state action alleged must be "so egregious, so outrageous,

that it may fairly be said to shock the contemporary conscience."  *Id*.

To support the substantive due process claims against Officers Demeritt and Koch,

Alston asserts,

> 109. Mr. Alston had the right to be free from unreasonable interference and obstruction by the government while spending time with friends in his own neighborhood.
>
> 110. Defendant Officers X and Y intentionally targeted and surrounded twenty-two-year-old Mr. Alston in an illegal jump-out intended to intimidate Mr. Alston. Defendant Officers had no legal cause or reason to target Mr. Alston while he was speaking with acquaintances outside a residence in Ward 8. Defendant Officers created the circumstances of the shooting and intentionally put Mr. Alston in a position that resulted in his death and causing him to fear for his life when at least six officers ambushed him and gave chase.
>
> 111. Defendant Officers did not make a reasonable inquiry as to whether Mr. Alston was engaged in or was about to engage in any illegal activity, nor did they identify themselves, instruct him to stop running or tell him why they were pursuing him prior to intentionally chasing and shooting him twelve to eighteen times with the intention of killing him.
>
> 112. Defendant Officer's illegal jump-out and chase without any provocation or lawful reason was an unreasonable governmental interference and obstruction of Mr. Alston's right to peacefully gather with friends in his own neighborhood, and therefore a violation of Mr. Alston's substantive due process rights.
>
> 113. If Defendant Officers had reasonably suspected Mr. Alston of being engaged in illegal activity, due process would entitle Mr. Alston to a lawful police stop, rather than a jump-out.
>
> 114. Mr. Alston was not afforded due process and was unreasonably deprived of his life as well as of his liberty to live peacefully in his neighborhood unimpeded by interference by the government.

*See* Am. Compl. ¶¶ 109-114.  These allegations are insufficient to support a viable substantive

due process claim.  Indeed, Alston has not properly pleaded a viable procedural *or* substantive

due process claim.  As shown in Section I(B) above and as depicted in the video footage,

Officers Demeritt and Koch did not violate M. Alston's constitutional rights. Rather, M. Alston was shot after he turned towards Officers Demeritt and Koch and threatened these Defendants' life, liberty and safety with a weapon in hand. *See* Exs. A-D. Officers Demeritt and Koch's decision to shoot M. Alston under the circumstances is not conscious-shocking behavior. Rather, Officers Demeritt and Koch made split-second decisions to save themselves from the harm presented by M. Alston as he brandished a gun appearing ready, willing and able to use it. Thus, under these circumstances, M. Alston received the process due him; he was not deprived of procedural or substantive due process rights. Just as Officers Demeritt and Koch should be granted qualified immunity for the shooting under Fourth Amendment jurisprudence, they should be granted qualified immunity under the Fifth Amendment for Alston's procedural and due process claims.

And the alleged conduct leading up to the shooting is also not conscience shocking and did not violate M. Alston's constitutional rights. That Officers Demeritt and Koch allegedly performed a jump out and pursued M. Alston when they saw what they believed to be "the outline of a gun and the trigger through Mr. Alston's pants," is not actionable. *See* Am. Compl. ¶ 13. As the Court in *Franklin* explained*,* "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir.2003) (quotations omitted). Indeed, "law enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop '[is] reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), 88 S. Ct. 1868, 1878-79 (1968). The reasonable suspicion

16

standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."  *Id*. (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120.)  Because none of the actions Alston attributes to these Defendants rise to the level of conscious shocking behavior, Alston cannot maintain these procedural and substantive due process claims.  *See* Am. Compl. ¶¶ 109-114.

III.    **The Fourteenth Amendment Does Not Apply to Officers Demeritt and Koch and Dismissal of These Claims Under Counts V and VI Is Warranted.**

Alston's Fourteenth Amendment claims under Counts V and VI against Officers Demeritt and Koch fail as a matter of law.  *See* Am. Compl. ¶¶ 107-122.  The Due Process Clause of the Fourteenth Amendment reads: "No State shall… deprive any person of life, liberty, or property without due process of law…."  U.S. CONST. 14TH AMEND.  Thus, by its terms, the Fourteenth Amendment applies only to the States; it does not apply to District of Columbia or its employees.  *See v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 125 (D.D.C. 2012) ("The Fourteenth Amendment . . .is not applicable to the actions of the District or its officials or employees"); *San Francisco Arts & Athletics, Inv. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n. 21 (1987) ("The Fourteenth Amendment applies to actions by a state"); *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia). Thus, because the Fourteenth Amendment does not apply to District employees Officers Demeritt and Koch, dismissal of Alston's Fourteenth Amendment claims under Counts V and VI is warranted.

IV.    **Alston's Claims Under Counts IX and X For Denial of the Right to Access to the Courts Fail as a Matter of Law.**

Dismissal of Alston's claims for denial of the right to access to the Courts under Counts IX and X, Am. Compl. ¶¶ 139-143, is appropriate for three reasons:

17

*First*, Alston only filed Counts IX and X under the Fourteenth Amendment which, as shown in Section III above, does not apply to these Defendants.

*Second*, the Supreme Court has recognized two categories of access denial:

> In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time .... In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed. The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future .... These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.

*Lopez v. District of Columbia*, 268 F.Supp. 3d 256, 261 (D.C. 2017) (citing *Christopher v. Harbury,* 536 U.S. 403, 413-414 (2002)). Alston alleges that "MPD and its officers conspired at many stages to cover up the events surrounding the unlawful shooting of Mr. Alston. *See* Am. Compl. ¶ 141. And she alleges that she was denied "the right to a fair opportunity to present her claims in a judicial forum." *Id.* ¶ 140. According to Alston, "Defendants impeded [her] ability to bring legal claims against them and thereby denied her adequate access to a judicial forum." *Id.* ¶ 143. These allegations do not support Alston's right to relief. *See Harbury*, 536 U.S. at 413-414. In *Harbury,* the plaintiff alleged that Government officials intentionally deceived her in concealing information that her husband "had been detained, tortured, and executed by Guatemalan army officers paid by the Central Intelligence Agency (CIA), and that this deception denied her access to the courts by leaving her without information, or reason to seek information, with which she could have brought a lawsuit that might have saved her husband's life." *Id.* In

denying the plaintiff's denial of access to court claim, the court held that the plaintiff's claim

failed because she did not identify her lost claims.  The Court reasoned that "the underlying

cause of action, whether anticipated or lost, is an element that must be described in the

complaint."  *Id.*  And when the access claim looks backward, "the complaint must identify a

remedy that may be awarded as recompense but not otherwise available in some suit that may yet

be brought. There is, after all, no point in spending time and money to establish the facts

constituting denial of access when a plaintiff would end up just as well off after litigating a

simpler case without the denial-of-access element."  *Id*.  Like the *Harbury* plaintiff, Alston has

not identified the causes of action she allegedly lost, nor has she shown that the remedy she seeks

through these "lost" claims is not otherwise available in the current suit.  *See* Am. Compl. ¶¶

139-143.  Thus, Alston's denial of access to court claims fail as a matter of law.

    *Third*, Alston's factual allegations support denial of these claims.  The incident leading to

this lawsuit occurred on June 12, 2018.  *See* Am. Compl. ¶ 11.  In ¶ 27, Alston alleges that on

"the night of the shooting, MPD alleged that the pursuit began when Mr. Alston started running

after they approached him in an alley. …[A]t some point during the chase Mr. Alston reached

toward his waistband and brandished a gun before Officers X and Y shot him."  In ¶ 29, Alston

states that on "June 13, 2018, MPD posted a statement about Mr. Alston's shooting on its

website that included a photograph of a semiautomatic gun officers allegedly recovered from the

scene alongside an extended magazine and ammunition (hereinafter 'Photograph 1')."

According to Alston, "[p]hotograph 1 shows the gun in shrubbery; Mr. Alston died in a paved

alley a significant distance from any foliage."  Because these two events occurred well before

any statute of limitations period expired for any claim Alston could have filed, no reasonable

juror could find that Alston was denied access to the court as alleged.  Thus, dismissal of Counts

IX and X is appropriate.

**V.     Alston's Intentional Tort Claims (Counts XII, XIV, and XV) Fail as a
        Matter of Law.**

    **A.     The Statute of Limitations Bars Alston's Battery, Assault and Intentional
        Infliction of Emotional Distress Claims Under the Survival Act (Counts XII,
        XIV, and XV).**

Under the Survival Act, "[o]n the death of a person in whose favor or against whom a

right has accrued for any cause prior to his death, the right of action, for all such cases, survives

in favor of or against the legal representative of the deceased.  *See* D.C. Code § 12-101 (1995

Repl.).  The "applicable period of limitations [for Survival Act claims] is the period that governs

the underlying claim.  *See Arrington v. District of Columbia*, 673 A.2d 674, 677 (D.C. 1996).

And a cause of action accrues "at the time the plaintiff's interest is invaded or at the time the

tortious act is committed which causes injury."  *See Nat'l R.R. Passenger Corp. v. Krouse*, 627

A.2d 489, 494 (D.C.1993).  Alston alleges Officers X and Y battered (Count XII), assaulted

(Count XIV) and committed intentional emotional distress (Counts XV) against M. Alston on

June 12, 2018.  *See* Am. Compl. at ¶¶ 11, 144-161.  Under D.C. Code § 12-301(4), battery and

assault have a one-year statute of limitations.  Alston filed this action on June 10, 2020.  *See*

Compl. [1].  Because Alston did not file this action before June 12, 2019, the one-year

anniversary of these alleged torts, the battery and assault claims are barred by the statute of

limitations.  *Id.*; § 12-301(4).

Similarly, Alston's IIED claim also is barred by the statute of limitations.  An IIED claim

depends on the facts supporting the claim.  When an IIED claim is intertwined with an

underlying assault and battery claim, the IIED claim will also be subject to a one-year limitations

period.  *See Saunders v. Nemati*, 580 A.2d 660, 662 (D.C. 1990) ("[I]n certain cases where

intentional infliction of emotional distress was included among a number of alleged torts, the

one-year statute of limitation has been applied where the nature of the action rested on the other

torts and the emotional distress aspect of the claim was essentially an outgrowth of the other

pleaded torts."). Alston's IIED claim is an outgrowth of the June 12, 2018 shooting. *See* Am.

Compl. ¶ 155 (alleging that Officers X and Y approached and pursued M. Alston and caused him

to suffer severe emotional distress); *id.* ¶ 157 ("With each shot until the point when he

succumbed to his injuries, Mr. Alston was in imminent fear for his life."). Thus, because

Alston's IIED claim is intertwined with her assault and battery claims, the Court should dismiss

Count XV as Alston's IIED claim under the Survival Act is barred by the one-year statute of

limitations. *See Zhi Chen v. Monk*, 701 F. Supp. 2d 32, 37 (D.D.C. 2010) (applying one-year

statute of limitations to IIED claim in the context of an excessive force battery); *see also*

*Arrington*, 673 A.2d at 677 (applying statute of limitations applicable to underlying tort to a

Survival Act claim). On this record, Counts XII, XIV, and XV, alleging battery, assault, and

intentional infliction of emotional distress claims under the Survival Act should be dismissed as

untimely. Moreover, as shown below, because all claims raised by Alston fail, even if the IIED

claims were intertwined with another claim not barred by the statute of limitations, the IIED

claims still fail.

     **B.**    **Alston's Intentional Infliction of Emotional Distress Claim Fails as Pleaded.**

     To maintain a claim for intentional infliction of emotional distress (IIED), "a plaintiff

must show (1) extreme and outrageous conduct on the part of the defendant which (2)

intentionally or recklessly (3) causes the plaintiff `severe emotional distress." *Larijani v.*

*Georgetown Univ*., 791 A.2d 41, 44 (D.C. 2002). The conduct alleged by the plaintiff must be

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See*

*Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (quoting *Drejza v. Vaccaro*, 650 A.2d 1308,

1312 n. 10 (D.C. 1994).  Here, Alston has failed to plead facts that rises to a level sufficient to

support the IIED claim.  According to Alston, Officers Demeritt and Koch performed an alleged

illegal jump out without introducing themselves to M. Alston who ran from them.  *See* Am.

Compl. ¶¶ 12, 15.  When M. Alston stopped running, he turned to the officers with gun in hand

and they shot him.  *See* Exs. A-D.  No reasonable juror could find that shooting the armed M.

Alson was "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency." *See Homan,* 711 A.2d at 818.  For these reasons, Alston's IIED claims fail

as a matter of law.

**VI.    Alston's Negligence Claims Should Be Dismissed (Counts XVII, XXIII, and XXIV).[2]**

**A.    Alston Improperly Recasts the Battery (Counts XII and XIII) and Assault
Claims (Counts XIV and XV) as Claims for Negligent Infliction of Emotional
Distress (Count XVII) and Negligence (Count XXIII and XXIV).**

Alston's negligent infliction of emotional distress and negligence claims against these

Defendants should be dismissed.  *See* Am. Compl. ¶¶ 173-87 and 205-16.  These claims are not

plausible because the Amended Complaint lacks any factual allegations showing that Officers

Demeritt and Koch acted negligently.  Rather, Alston alleges that these Officers acted

intentionally.  *Id*.  Although Alston uses the terms "had a duty to exercise reasonable care" and

"breach of duty" to support her negligence claims, merely using these terms does not make her

negligence claim cognizable.  *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C.

Cir. 2015) (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 708 (D.C. 2003)); *see also*

---

[2]    Although all DC Officers are identified as Defendants under Counts XIX and XX
(Negligence in Supervising and Retaining Officers X and Y) and Counts XXI and XXII
(Negligence in Training Officers X and Y), as a matter of law, these Defendants cannot be held
liable under these Counts.

*Kivanc v. Ramsey*, 407 F.Supp.2d 270, 277 (D.D.C. 2006) ("Invoking the words 'duty,' 'breach,' 'cause,' and 'injury' does not transform an intentional tort into negligence.")  That is because "[i]ntent and negligence are regarded as mutually exclusive grounds for liability."  *Chinn*, 839 A.2d at 706 (internal quotation marks and citation omitted); see also Dan B. Dobbs et al., THE LAW OF TORTS § 31 (2d ed. 2011) ("Any given act may be intentional or it may be negligent, but it cannot be both.").  And "a plaintiff cannot seek to recover by 'dressing up the substance' of one claim, here [assault, battery and IIED], in the 'garments' of another, here negligence." *Chinn*, 839 A.2d at 708 (quoting *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000)); *see also Harris*, 776 F.3d at 916 (affirming dismissal of negligent infliction of emotional distress claim because the amended complaint "does not distinguish between negligent and intentional acts, does not identify any specific act that was allegedly negligent, and fails to make out a claim of negligent infliction of emotional distress").

Indeed, Alston's factual allegations only describe intentional acts.  *See* Am. Compl. ¶ 91 ("Decedent Alston was wrongfully killed by Officers X and Y."); *id*. ¶ 175 (Defendant Officers "approach[ed] and pursue[ed] Mr. Alston without apparent justification . . . ."); *id.* ¶ 176 (Defendant Officers "shot[ ] Mr. Alston without provocation."); *id*. ¶ 210 ("Officers X and Y approached Mr. Alston without cause and . . . failed to identify themselves to Mr. Alston or speak with him prior to pursuing him."); *id*. ("Officers X and Y did not attempt to use de-escalation . . . prior to shooting Mr. Alston multiple times."); *id.* ¶ 208 ("Officers X and Y failed to provide first-aid services to Mr. Alston after shooting him.").  These allegations show intentional tort claims, not negligence claims.  *See Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 69 (D.D.C. 2012) (dismissing negligent infliction of emotional distress claim where allegations in complaint demonstrate only intentional conduct by defendants); *Chinn*, 839 A.2d

at 705-07 (noting that an officer's mistaken belief that they needed to exert the amount of force that they did does not affect the intentionality of the initial action or the objective excessiveness of the force).

Alston's reference to MPD regulations to support her claim that these Defendants had "a duty of reasonable care to use only the minimal amount of force necessary to apprehend him," is insufficient to transform her intentional torts to negligence claims.  *See* Am. Compl. ¶¶ 85-86 (citing 6A D.C.M.R. § 207).  A duty to use the minimum force necessary is not "arguably distinct" from a duty to refrain from excessive force.  *See Chinn*, 839 A.2d at 710-11.  Nor does Alston allege alternate scenarios constituting distinct acts of negligence that played a part in the defendant officers' decision to use force.  *See* Am. Compl. ¶¶ 173-181,182-187 and 205-216; *see also Spicer v. District of Columbia*, 916 F. Supp. 2d 1, 5 (D.D.C. 2013) (dismissing negligence claims where "there simply are no factual allegations separate from those comprising the intentional tort claims to support a distinct negligence claim").  Thus, Counts XVII, XXIII, and XXIV of the Amended Complaint should be dismissed.

### B.   Alston's Negligent Infliction of Emotional Distress (NIED) Claim (Count XVII) Fails as a Matter of Law.

Under District of Columbia law, a plaintiff may recover for negligent infliction of emotional distress under the "zone of danger" test which allows a plaintiff to recover "for mental distress if the defendant's actions caused the plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'"  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011) (en banc) (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990) (en banc)).  Indeed, at the motion to dismiss stage,

> A plaintiff alleging [NIED] must demonstrate that "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being," "there is

an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff," and such harm ensues.

*See Odom v. District of Columbia*, 248 F. Supp. 3d 260, 265 (D.D.C. 2017), *citing Hedgepeth*, 22 A.3d at 810-11.  And "the question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court."  *See Croce v. Hall,* 657 A.2d 307, 310 (D.C. 1995), citing W. PAGE KEETON, PROSSER AND KEETON ON TORTS § 37, at 236 (5th ed. 1984) (footnote omitted).

This Court must determine whether Alson has pleaded facts to support this claim against these Defendants, i.e. whether she has alleged facts to show that a special relationship existed between M. Alston and Officers Demeritt and Koch so as to create a duty owed to M. Alston. "[T]o qualify as 'special,' a relationship must involve 'the emotional well-being of others ... at [its] core,' or must 'necessarily implicate[]' such well-being."  *See Lesesne v. District of Columbia*, 146 F. Supp. 3d 190, 196 (D.D.C. 2015), citing *Hedgepeth*, 22 A.3d at 814.  Here, there is no showing that on or before June 12, 2018, M. Alston and Officers Demeritt and Koch had a "special" or any type of relationship.  In fact, there is no showing that Officers Demeritt or Koch knew M. Alston or that at some point in time relevant to the June 12, 2018 incident, they developed a special relationship with him.  In fact, according to Alston, when M. Alston was approached by Officers X and Y, he was speaking with acquaintances and was immediately chased.  *See* Am. Compl. ¶ 12.  And M. Alston was shot when he started to stop and turned to face Defendant Officers.  *Id.* at ¶ 16.  These allegations show that Officers Demeritt and Koch never developed a relationship with M. Alston nor undertook any responsibility for "the emotional well-being of [M. Alston] … at [its] core" or which "'necessarily implicate[]' such well-being…"  For these reasons, judgment should be entered in favor of Officers Demeritt and

Koch as a matter of law.  And based on M. Alston's actions, turning to face the officers with a

gun in his hand, no reasonable jury could not conclude that he did contribute to the shooting.

### C.   Alston's Negligence Claim Leading Up to M. Alston's Death (Counts XXIII and Counts XXIV) Cannot Be Maintained.

In a common law negligence claim, the plaintiff bears the burden of proof on three issues:

"the applicable standard of care, a deviation of that standard by the defendant, and a causal

relationship between that deviation and the plaintiff's injury."  *Meek v. Shepard,* 484 A.2d 579,

581 (D.C. 1984).  Alston alleges that "X and Y and the District had a duty to exercise reasonable

care toward Mr. Alston," and "breached that duty by approaching and pursing [him] without

apparent justification, causing him to fear for his life."  *See* Am. Compl. ¶¶ 174-175.  And,

allegedly, Officers X and Y also breached their duty by shooting M. Alston and causing him to

suffer severe emotional distress.  *Id.* ¶ 176.  While Alston has evoked the right legal terms to

support the claim—duty, breach, causation—the facts as pleaded do not provide the proper

framework for Alston's negligence claims.

Under the laws of the District of Columbia, these Defendants, as District employees,

owed no specific duty to M. Alston.  In fact, police officers "owe no duty to provide public

services to particular citizens as individuals.  Instead, ... the [ ] duty is to provide public services

to the public at large."  *Hines v. District of Columbia*, 580 A.2d 133, 136 (D.C. 1990) (citations

omitted).  In order to convert a public duty into a special duty owed M. Alston, greater than

owed to the public at large, Alston must allege and prove three things: (1) a direct or continuing

contact between the injured party and a governmental agency or official, (2) justifiable reliance

on the part of the injured party, and (3) damages caused by the breach.  *See Powell v. District of*

*Columbia*, 602 A.2d 1123, 1128 (D.C. 1992).  "The public duty doctrine has long protected

municipalities and its employees from negligence claims because it establishes that '[t]he duty to

provide public services is owed to the public at large,' not any specific individual." *McGaughey v. District of Columbia,* 684 F.3d 1355, 1358 (D.C. Cir. 2012).  Alston's allegations as pleaded show no specific duty owed by Officers Demeritt and Koch to M. Alson.  *See* Am. Compl., generally.  As was made clear in *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996), a plaintiff must show that the defendant owed a duty that was "specific to the plaintiff, and not some amorphous, free-floating duty to society."  Alston has not satisfied this burden.  On the contrary, Alston alleges that officers conduct jump outs throughout the City and Officers Demeritt and Koch did so on June 12, 2018.  *Id.* at ¶ 12.  And other than allege there was a pursuit and shooting, Alston has not pleaded facts showing any special relationship between M. Alston and these Defendants.  Without a specific duty owed by Officers Demeritt and Koch to M. Alston, no breach occurred and no damages flow from the non-existing breach.  More importantly, Officers Demeritt and Koch acted in self-defense and defense of one another when they used force against M. Alston.  Thus, on this record, Alston's negligence claims fail as a matter of law.

## VII.   Alston's IIED Claim in Her Individual Capacity Should Be Dismissed (Count XVI).

Alston's allegations do not support a viable IIED claim in her individual capacity against these Defendants.  To survive a motion to dismiss this claim, Alston must allege "conduct [towards her] that was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Williams v. District of Columbia,* 9 A.3d 484, 494 (D.C. 2010) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C.1991)).  Alston has not met this burden.

Although Alson identifies "DC officers" in this Count as defendants, she does not specifically identify Officers X and Y or any role they played in the allegations as raised.  *See* Am. Compl. ¶¶ 162-172.  For that reason alone, this Count should be dismissed against these

Defendants.  Moreover, the allegations as raised do not support liability against these

Defendants.  Alston alleges that the officers who finally notified her of her son's death were

"curt and thoughtless."  *Id.* ¶ 164.  MPD refused to show her the full unedited footage of the

incident or allow others to be present when she viewed the footage.  *Id.* ¶ 165.  And "[b]y

denying her repeated requests, the District forced her to advocate publicly and privately for

access to the footage.  As a result, [Alston] has to repeatedly relive her son's shooting and

recount her traumatizing interactions with MPD.  The experience has been emotionally

devastating."  *Id.* ¶ 166.  There is no showing that Officers Demeritt or Koch had any

conversation with Alston after the June 12, 2028 shooting.  Indeed, they would not have been

responsible for notifying her of M. Alston's death.  Nor would they have been able to release the

requested video footage to her.  The regulations in effect in 2018 made BWC footage

presumptively private.  *See* D.C.M.R. § 24-3902.5 (permitting only a "subject of a BWC

recording, the subject's legal representative, and the subject's parent or legal guardian if the

subject is a minor" to view the BWC recording ).  Thus, the non-disclosure of the footage to

Alston's family and the public or other actions as described by Alston were not so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency.  *See*

*Williams*, 9 A.3d at 494.  Thus, the Court should dismiss Alston's IIED claim in Count XVI on

the merits against these Defendants.

## CONCLUSION

For these reasons, the Court should grant Officers Demeritt and Koch's motion and

dismiss the Amended Complaint against them with prejudice.

28

Date:  November 4, 2020                    Respectfully submitted,

                                          KARL A. RACINE
                                          Attorney General for the District of Columbia
                                          CHAD COPELAND
                                          Deputy Attorney General
                                          Civil Litigation Division

                                          /s/ *Patricia A. Oxendine*
                                          PATRICIA A. OXENDINE
                                          D.C. Bar No. 428132
                                          Chief, Civil Litigation Division, Section

                                          /s/ *Kerslyn D. Featherstone*
                                          KERSLYN D. FEATHERTONE
                                          D.C. Bar No. 478758
                                          Senior Assistant Attorney General
                                          MICHELLE HERSH
                                          D.C. Bar No. 980097
                                          MATTHEW TROUT
                                          D.C. Bar No. 1030119
                                          Assistant Attorneys General
                                          400 6th Street, NW
                                          Washington, D.C. 20001
                                          (202) 724-6600 (direct);
                                          (202) 727-6295 (main)
                                          (202) 724-(fax)
                                          kerslyn.featherstone@dc.gov

                                          *Counsel for Defendants Demeritt and Koch*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

KENITHIA ALSTON, individually and
as Special Administrator to the Estate of
Marqueese Alston,

        *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, et al.,

        *Defendants*.

1:20-cv-1515 (KBJ)

---

**<u>ORDER</u>**

Upon consideration of Defendants Caleb Demeritt and Ronald Koch's Motion to Dismiss Plaintiff Kenithia Alston's Amended Complaint, any opposition, reply, and the entire record, it is this _____ day of _____, 2020,

**ORDERED** that the Defendants' Motion is **GRANTED** for the reasons raised in their motion; and it is,

**FURTHER ORDERED** that Alston's Amended Complaint is **DISMISSED WITH PREJUDICE** against Officers Demeritt and Koch.

**SO ORDERED.**

_____
JUDGE KETANJI BROWN JACKSON
U.S. District Court for the District of Columbia